IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Yvonne Selby**, <br><br> Plaintiff, <br><br> v. <br><br> **CVS Health Corporation**, <br> **CVS Pharmacy, Inc.**, <br> **CVS RX Services, Inc.**, and <br> **Maryland CVS Pharmacy, LLC**, <br><br> Defendants. | **Complaint and Jury Trial Demand** |

Yvonne Selby alleges the following on personal knowledge as to herself and otherwise on information and belief:

## Introduction

1.   Yvonne Selby brings this lawsuit against CVS Health Corporation and the other defendants because she was prevented from making a purchase at CVS/Pharmacy Store #2034 on account of her race. Selby is Black. In June 2019, she tried to buy pain medicine for her ailing son from Store #2034's pharmacy. She offered cash to Jennifer Whiley, a store pharmacist who is white. Whiley, however, rejected the cash. The reason, Whiley said, was a CVS policy against accepting cash payment for prescribed narcotics. But Whiley had already determined that Selby met the ordinary requirements for buying the medicine. And roughly two weeks earlier, a different store pharmacist at the same store told Selby she could buy the same medicine with cash. So Selby suspected the so-called CVS policy was a ruse for racial profiling. After CVS upper management confirmed her suspicion—by disavowing

1

the policy—she conveyed that to Whiley and tried to finish her intended purchase. Yet Whiley still rejected her cash payment. Even worse, immediately after Selby told Whiley— for the third time—that she believed Whiley was racially profiling her, Whiley made a false police report about Selby acting disorderly and then made the Baltimore Police eject her from Store #2034.

2. Selby asserts nine claims against Defendants:

a. claims 1 to 4 for race-based disparate treatment, race-based harassment, retaliation, and retaliatory harassment under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981;

b. claims 5 to 8 for race-based disparate treatment, race-based harassment, retaliation, and retaliatory harassment under Section 1982 of the Civil Rights Act of 1866, 42 U.S.C. § 1982; and

c. claim 9 for unfair and deceptive trade practices under the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.*

3. In asserting these claims, she seeks to both redress the harm caused by Defendants and deter them as well as other retail establishments from discriminating against any retail consumer on account of the consumer's race.

## Jurisdiction and Venue

4. The Court has subject-matter jurisdiction over Selby's federal-law claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Selby's state-law claims under 28 U.S.C. § 1367(a).

5. Venue is proper because this lawsuit concerns events that happened in this jurisdiction.

## Parties

6.   Plaintiff Yvonne Selby is 53 years old and lives in Baltimore City, MD. She works for Citywide/Allender Bus Company as a lead supervisor. She is Black.

7.   Defendants operate the largest retail pharmacy chain in the United States, with many physical locations in Maryland, including standalone stores and locations within other branded stores. Defendants are authorized to conduct business in Maryland and do conduct business in Maryland. As part of their operations, Defendants employ store pharmacists to perform various functions such as dispensing prescription and over-the-counter medicine.

   a.   Defendant CVS Health Corporation is a corporation organized under Delaware law that is engaged in the business of operating retail stores that sell pharmaceuticals and general merchandise and provide pharmacy services throughout Maryland. CVS Health can be served with process through its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

   b.   Defendant CVS Pharmacy, Inc. is a corporation organized under Rhode Island law that is engaged in the business of operating retail stores that sell pharmaceuticals and general merchandise and provide pharmacy services throughout Maryland. A subsidiary of CVS Health, CVS Pharmacy can be served with process through its registered agent: The Corporation Trust, Inc., 2405 York Road, Suite 201, Lutherville Timonium, MD 21093-2264.

   c.   Defendant CVS RX Services, Inc. is a corporation organized under New York law that is engaged in the business of providing pharmacy services throughout Maryland. A subsidiary of CVS Health, CVS Rx can be served with process through its

3

registered agent: The Corporation Trust, Inc., 2405 York Road, Suite 201,

Lutherville Timonium, MD 21093-2264.

d.   Defendant Maryland CVS Pharmacy, LLC is a limited liability company organized

under Maryland law that is engaged in the business of providing pharmacy services

throughout Maryland. A subsidiary of CVS Health, Maryland CVS can be served

with process through its registered agent: The Corporation Trust, Inc., 2405 York

Road, Suite 201, Lutherville Timonium, MD 21093-2264.

8.   At all relevant times, Jennifer Whiley worked for Defendants at CVS/Pharmacy

Store #2034, 5200 York Road, Baltimore, MD 21212 as a store pharmacist. She is white.

9.   At all relevant times, Kevin Uhll worked for Defendants in upper management as a

pharmacy manager.

10. Defendants are vicariously liable for the acts of Whiley, Uhll, and every other

employee of Defendants involved in the events giving rise to this lawsuit, because the

employees acted within the scope of their employment.

<u>**Factual Allegations**</u>

**May 29, 2019: A store pharmacist tells Yvonne Selby, who is Black, that CVS/Pharmacy customers can buy prescribed narcotics with cash**

11. On May 29, 2019, Yvonne Selby visited CVS/Pharmacy Store #2034 to buy an

antibiotic and a pain narcotic for her son Brandon Wilson. He needed them because he was

suffering pain from an infection.

12. The store pharmacist determined that Wilson's prescriptions were legitimate and that

Selby met the ordinary requirements for buying the medicine.

13. Because Wilson's insurance and pharmacy cards were expired, the store pharmacist

told Selby she had to pay for Wilson's medicine out of pocket.

4

14. Selby asked if she could pay with cash.

15. The store pharmacist said yes.

16. But Selby could afford only the antibiotic. It cost $28 and the pain medicine cost $14. Because she had only $30 in cash, she bought the antibiotic and told the store pharmacist she would buy the pain medicine another time.

**June 14, 2019: A different store pharmacist—a white woman named Jennifer Whiley— racially profiles Selby and relies on a false policy to hide her racial bias and justify rejecting Selby's cash payment**

17. On June 14, 2019, Selby decided to return to Store #2034 for the pain medicine because her son was still in pain. She called the pharmacy around 11 am to confirm it was ready for pickup.

18. A woman answered for Store #2034's pharmacy. Selby explained why she didn't buy her son's pain medicine on May 29 and why she needed to buy it that day. After getting Wilson's date of birth from Selby and determining that he is a legal adult, the woman insisted on verifying the information necessary for filling the prescription by speaking to Wilson directly.

19. Selby made a three-way conference call to Wilson. The woman verified the necessary information with him. Then she put Wilson and Selby on hold.

20. A few minutes later, the woman returned to the conference call and said something to the effect of "I'm sorry, but it is CVS policy that you cannot pay for controlled substances/narcotics with cash."

21. Selby told the woman she needed to pay with cash. Wilson's insurance and pharmacy cards were expired. Cash was all she had that day.

22. Still, the woman maintained that Selby's cash was unacceptable because of CVS's

no-cash-payment-for-prescribed-narcotics policy.

23. By then, Selby was within walking distance of Store #2034, so she ended the call politely and walked toward the store.

24. She entered the store around 3:20 pm and headed for the pharmacy. She introduced herself to the people working behind the pharmacy counter as the woman who had just called about paying for her son's pain medicine with cash. She told them she didn't understand CVS's no-cash-payment-for-prescribed-narcotics policy and wanted to discuss it with the store pharmacist on duty.

25. A white woman named Jennifer Whiley introduced herself as the store pharmacist on duty. She took responsibility for the no-cash-payment-for-prescribed-narcotics policy communicated to Selby earlier on the phone.

26. Selby asked her to explain the policy's basis since a different CVS store pharmacist at the same store told her that she could buy the same medicine with cash roughly two weeks earlier.

27. Whiley repeated that she would not accept Selby's cash, saying something to the effect of "Ma'am, you cannot pay cash for a narcotic or controlled substance because of CVS policy."

28. Selby asked when the policy went into effect.

29. Whiley said it was already in effect when she joined Store #2034 in October 2018.

30. But Selby had ample reason to suspect Whiley was using the so-called CVS policy to hide the fact that she was racially profiling Selby. Roughly two weeks earlier, a different pharmacist at the same store told Selby she could buy the same medicine with cash. Also, Selby met the ordinary requirements for buying the medicine. Wilson's prescription was

legitimate. His identity had been verified. So had hers. What's more, Selby knew that "shopping while Black"[1]—being racially profiled and subjected to poor service and inferior treatment while shopping because one is Black—happens too often in CVS stores across the United States and that Whiley was aware of her race. To be sure, Whiley didn't point to any reason for rejecting Selby's cash payment besides the so-called CVS policy. Nor could she.

31. As a result, Selby told Whiley she believed Whiley was racially profiling her.

32. Whiley denied it and pointed to the so-called CVS policy.

33. That didn't put Selby's suspicions to rest, so Selby asked Whiley for CVS's corporate department phone number.

34. Whiley gave her 1-800-SHOP-CVS.

35. Selby copied the number and left the store.

**Kevin Uhll—a member of CVS upper management—confirms that the no-cash-payment-for-prescribed-narcotics policy was false**

36. When Selby called 1-800-SHOP-CVS around 2:37 pm that afternoon, her suspicions about Whiley were confirmed. Selby spoke to Kevin Uhll, a pharmacy manager in upper management. She told him about her son's need for the pain medicine, the first store pharmacist's willingness to accept cash payment for the medicine on May 29, and Whiley's contrasting refusal to accept cash payment for the same medicine that day because of CVS's no-cash-payment-for-prescribed-narcotics policy—which Selby believed was a ruse for racial profiling. Uhll disavowed the policy. He made clear that no such policy exists for Defendants' pharmacies in Maryland, saying something to the effect of "There is no CVS

---

[1] *See* Cassi Pittman Claytor, *'Shopping While Black': yes, bias against black customers is real*, THE GUARDIAN, June 24, 2019, https://www.theguardian.com/commentisfree/2019/jun/24/shopping-while-black-yes-bias-against-black-customers-is-real (last visited November 4, 2019).

policy that states you cannot pay cash for these types of prescriptions." He acknowledged that people sometimes lack health insurance coverage and as a result must pay for medicine out of pocket. He then apologized for Whiley's misconduct and promised to escalate Selby's complaint promptly.

37. Selby asked if Uhll if she could return to Store #2034 to buy the pain medicine with cash.

38. He said yes.

39. But Uhll could have and should have done more. Once he received actual notice of Selby's complaint, he became obligated to respond to it with reasonable care. At minimum, he should have taken reasonable steps to ensure that Whiley would accept Selby's cash payment when Selby returned to Store #2034 that afternoon.

40. He didn't, though.

**Whiley shuts down Selby's purchase attempt by making the Baltimore Police eject Selby from Store #2034 immediately after Selby calls Whiley out for racial profiling**

41. Around 3:20 pm, Selby returned to Store #2034 accompanied by her coworker Moushira Carter.

42. Whiley was still the store pharmacist on duty.

43. Selby told her about Uhll's disavowal of the no-cash-payment-for-prescribed-narcotics policy and then tried again to buy the pain medicine with cash.

44. Yet Whiley still rejected her cash payment.

45. Noting that Uhll's disavowal proved the policy false, Selby said again that she believed Whiley was racially profiling her.

46. Whiley could have—and should have—exercised reasonable care concerning her decision to reject Selby's cash payment. Once Whiley received actual notice that Uhll

disavowed the no-cash-payment-for-prescribed-narcotics policy, she became obligated to respond with reasonable care to the crucial contradiction created by his disavowal. At minimum, she should have contacted Uhll or another appropriate superior for advice on how to resolve the crucial contradiction.

47. But she didn't.

48. Instead, she punished Selby for complaining about racial discrimination. Immediately after Selby called her out for racial profiling, Whiley falsely accused Selby of using her cell phone to record her. Selby proved her wrong by showing her the cell phone, which reflected no recording activity.

49. Next, Whiley threatened to report Selby to the Baltimore Police Department ("Baltimore PD") for disorderly behavior—even though Selby was not acting disorderly—if Selby did not leave the store immediately.

50. Selby implored Whiley to accept her cash payment.

51. Whiley called the Baltimore PD and falsely reported that Selby was acting disorderly.

52. Selby felt humiliated. She told Whiley she was just a caring mother who wanted to make an honest purchase to help her ailing son. She reminded Whiley why she believed the so-called CVS policy was false: a member of CVS upper management said the policy didn't exist at all.

53. Besides feeling humiliated, Selby was scared. Given the current epidemic of police brutality against Black people, she reasonably feared for her physical safety.

54. Throughout this exchange with Whiley, Selby never raised her voice or acted disorderly.

55. Whiley shut down Selby's purchase attempt in a markedly hostile manner that an objective person would find objectively unreasonable. Several Baltimore PD officers arrived soon after Whiley made the false police report. They approached Selby in full uniform, with their guns in plain sight. They ordered her to leave Store #2034 because Whiley wanted her gone. Selby explained that she never acted disorderly and that she needed to buy the medicine for her ailing son. None of that mattered, they replied, because Whiley wanted her gone. Selby then told them that Store #2034's manager was contacting CVS upper management about her problem. The Baltimore PD officers walked away to speak to the manager. Then they returned to the pharmacy area and spoke to Whiley. Shortly afterward, they ejected Selby from Store #2034.

56. Several individuals, including Moushira Carter, witnessed Selby's exchange with Whiley and her ejection from Store #2034.

57. The unlawful poor service and inferior treatment Selby experienced at Store #2034 has caused her substantial harm. Besides incurring additional expense and experiencing unnecessary inconvenience because of her effort to buy her son's pain medicine elsewhere, she has suffered emotional and psychological harm from being prevented from finishing her intended purchase at Store #2034—while also being subjected to the threat of police brutality and being ejected by Baltimore PD officers—because she is a Black woman and because she possessed the dignity and courage to oppose the pernicious unlawful practice of racial profiling. She still experiences anxiety and embarrassment whenever she passes a CVS store. She no longer feels comfortable entering a CVS store for fear that she will be discredited and racially profiled all because she is Black.

58. On November 3, 2019, Selby began the process of filing a discrimination charge

against Defendants with the Maryland Commission on Civil Rights ("MCCR"), because she has claims under the public-accommodation discrimination provisions spelled out in the Maryland State Code. Those provisions prohibit a retail establishment from refusing to sell goods or services to a consumer on account of the consumer's race.

59. If MCCR issues a right-to-sue notice, Selby will add the claims raised in her MCCR charge to this Complaint by amendment.

<u>First Claim for Relief</u>

**Race-Based Disparate Treatment in Violation of Section 1981**

60. Yvonne Selby incorporates every preceding paragraph as alleged above.

61. Section 1981 forbids a private actor to prevent a person from making or enforcing contracts in the retail context on account of the person's race.

62. Defendants are private actors within the meaning of Section 1981.

63. Selby belongs to a protected class because she is Black.

64. By holding out merchandise for sale to the public, Defendants entered a proposed retail contract with Selby whereby Defendants would sell her merchandise in exchange for money. Selby intended to buy merchandise from Defendants because she offered cash in exchange for the pain medicine. But having racially profiled her, Defendants lied about a policy to both justify rejecting her cash payment and hide the fact that they had racially profiled her. Defendants' conduct ultimately prevented Selby from finishing her intended purchase.

65. By doing so, Defendants deprived Selby of an actual contract interest as a result of her race.

66. This race-based disparate treatment has directly and proximately caused Selby

pecuniary loss, emotional pain, embarrassment, humiliation, inconvenience, and anxiety.

67. In subjecting Selby to the race-based disparate treatment discussed above, Defendants acted with malice or reckless indifference to her Section 1981 rights, making it necessary to award punitive or exemplary damages to punish Defendants and deter other retail establishments from similar misconduct.

## Second Claim for Relief

### Race-Based Harassment in Violation of Section 1981

68. Selby incorporates every preceding paragraph as alleged above.

69. Section 1981 forbids a private actor to subject a retail consumer to harassment on account of the consumer's race.

70. Having racially profiled Selby, Defendants engaged in a series of related acts, including (but not limited to) the following: lying about a policy to both justify rejecting Selby's cash payment and hide the fact that they had racially profiled her; falsely accusing Selby of using her cell phone to record Whiley; threatening to report Selby to the Baltimore PD for disorderly conduct, even though she never acted disorderly; falsely reporting to the Baltimore PD that Selby acted disorderly; making the Baltimore PD eject Selby from Store #2034; and ultimately preventing Selby from finishing her intended purchase.

71. By doing so, Defendants created a retail environment permeated with racially discriminatory intimidation, ridicule, and insult that was sufficiently severe and sufficiently pervasive to create an abusive retail environment that ultimately deprived Selby of an actual contract interest.

72. This race-based harassment has directly and proximately caused Selby pecuniary loss, emotional pain, embarrassment, humiliation, inconvenience, and anxiety.

73. In subjecting Selby to the race-based harassment discussed above, Defendants acted with malice or reckless indifference to her Section 1981 rights, making it necessary to award punitive or exemplary damages to punish Defendants and deter other retail establishments from similar misconduct.

### Third Claim for Relief

**Retaliation in Violation of Section 1981**

74. Yvonne Selby incorporates every preceding paragraph as alleged above.

75. Section 1981 forbids a private actor to take a materially adverse action against a person for engaging in protected conduct.

76. Selby believed reasonably and in good faith that Whiley subjected her to race-based disparate treatment and harassment because of her May 29 conversation with a CVS store pharmacist and her June 14 conversation with Uhll.

77. Selby engaged in Section 1981 protected conduct. This includes (but is not limited to) when she told Whiley that she believed racial profiling was behind Whiley's decision to reject her cash payment; when she told Uhll that she believed Whiley rejected her cash payment as a result of racial profiling; and when she opposed Whiley's decision to call the Baltimore PD immediately after she called Whiley out for racial profiling.

78. Defendants had actual knowledge of Selby's protected conduct.

79. As a result of Selby's protected conduct, Defendants engaged in a series of related materially adverse acts, including (but not limited to) the following: lying about a policy to both justify rejecting Selby's cash payment and hide the fact that they had racially profiled her; falsely accusing Selby of using her cell phone to record Whiley; threatening to report Selby to the Baltimore PD for disorderly conduct, even though she never acted disorderly;

falsely reporting to the Baltimore PD that Selby acted disorderly; making the Baltimore PD eject Selby from Store #2034; and ultimately preventing Selby from finishing her intended purchase.

80. These acts of retaliation have directly and proximately caused Selby pecuniary loss, emotional pain, embarrassment, humiliation, inconvenience, and anxiety.

81. In subjecting Selby to the acts of retaliation discussed above, Defendants acted with malice or reckless indifference to her Section 1981 rights, making it necessary to award punitive or exemplary damages to punish Defendants and deter other retail establishments from similar misconduct.

## Fourth Claim for Relief

### Retaliatory Harassment in Violation of Section 1981

82. Yvonne Selby incorporates every preceding paragraph as alleged above.

83. Section 1981 forbids a private actor to subject a retail consumer to harassment on account of the consumer's protected conduct.

84. As a result of Selby's Section 1981 protected conduct described above, Defendants engaged in a series of related materially adverse acts, including (but not limited to) the following: lying about a policy to both justify rejecting Selby's cash payment and hide the fact that they had racially profiled her; falsely accusing Selby of using her cell phone to record Whiley; threatening to report Selby to the Baltimore PD for disorderly conduct, even though she never acted disorderly; falsely reporting to the Baltimore PD that Selby acted disorderly; making the Baltimore PD eject Selby from Store #2034; and ultimately preventing Selby from finishing her intended purchase.

85. By doing so, Defendants created a retail environment permeated with retaliatory

intimidation, ridicule, and insult that was sufficiently severe and sufficiently pervasive to create an abusive retail environment that ultimately deprived Selby of an actual contract interest.

86. This retaliatory harassment has directly and proximately caused Selby pecuniary loss, emotional pain, embarrassment, humiliation, inconvenience, and anxiety.

87. In subjecting Selby to the retaliatory harassment discussed above, Defendants acted with malice or reckless indifference to her Section 1981 rights, making it necessary to award punitive or exemplary damages to punish Defendants and deter other retail establishments from similar misconduct.

### Fifth Claim for Relief

### Race-Based Disparate Treatment in Violation of Section 1982

88. Yvonne Selby incorporates every preceding paragraph as alleged above.

89. Section 1982 forbids a private actor to prevent a person from buying personal property on account of the person's race.

90. Defendants are private actors within the meaning of Section 1982.

91. Selby belongs to a protected class because she is Black.

92. Selby intended to buy merchandise from Defendants because she offered cash in exchange for the pain medicine. But having racially profiled her, Defendants lied about a policy to both justify rejecting her cash payment and hide the fact that they had racially profiled her. Defendants' conduct ultimately prevented Selby from finishing her intended purchase.

93. By doing so, Defendants prevented Selby from buying personal property as a result of her race.

94. This race-based disparate treatment has directly and proximately caused Selby pecuniary loss, emotional pain, embarrassment, humiliation, inconvenience, and anxiety.

95. In subjecting Selby to the race-based disparate treatment discussed above, Defendants acted with malice or reckless indifference to her Section 1982 rights, making it necessary to award punitive or exemplary damages to punish Defendants and deter other retail establishments from similar misconduct.

<u>Sixth Claim for Relief</u>

**Race-Based Harassment in Violation of Section 1982**

96. Yvonne Selby incorporates every preceding paragraph as alleged above.

97. Section 1982 forbids a private actor to subject a retail consumer to harassment on account of the consumer's race.

98. Having racially profiled Selby, Defendants engaged in a series of related acts, including (but not limited to) the following: lying about a policy to both justify rejecting Selby's cash payment and hide the fact that they had racially profiled her; falsely accusing Selby of using her cell phone to record Whiley; threatening to report Selby to the Baltimore PD for disorderly conduct, even though she never acted disorderly; falsely reporting to the Baltimore PD that Selby acted disorderly; making the Baltimore PD eject Selby from Store #2034; and ultimately preventing Selby from finishing her intended purchase.

99. By doing so, Defendants created a retail environment permeated with racially discriminatory intimidation, ridicule, and insult that was sufficiently severe and sufficiently pervasive to create an abusive retail environment that ultimately prevented Selby from buying personal property.

100.    This race-based harassment has directly and proximately caused Selby

pecuniary loss, emotional pain, embarrassment, humiliation, inconvenience, and anxiety.

101.     In subjecting Selby to the race-based harassment discussed above, Defendants acted with malice or reckless indifference to her Section 1982 rights, making it necessary to award punitive or exemplary damages to punish Defendants and deter other retail establishments from similar misconduct.

### Seventh Claim for Relief

### Retaliation in Violation of Section 1982

102.     Yvonne Selby incorporates every preceding paragraph as alleged above

103.     Section 1982 forbids a private actor to take a materially adverse action against a person for engaging in protected conduct.

104.     Selby believed reasonably and in good faith that Whiley subjected her to race-based disparate treatment and harassment because of her May 29 conversation with a CVS store pharmacist and her June 14 conversation with Uhll.

105.     Selby engaged in Section 1982 protected conduct. This includes (but is not limited to) when she told Whiley that she believed racial profiling was behind Whiley's decision to reject her cash payment; when she told Uhll that she believed Whiley rejected her cash payment as a result of racial profiling; and when she opposed Whiley's decision to call the Baltimore PD immediately after she called Whiley out for racial profiling.

106.     Defendants had actual knowledge of Selby's protected conduct.

107.     As a result of Selby's Section 1982 protected conduct, Defendants engaged in a series of related materially adverse acts, including (but not limited to) the following: lying about a policy to both justify rejecting Selby's cash payment and hide the fact that they had racially profiled her; falsely accusing Selby of using her cell phone to record Whiley;

threatening to report Selby to the Baltimore PD for disorderly conduct, even though she never acted disorderly; falsely reporting to the Baltimore PD that Selby acted disorderly; making the Baltimore PD eject Selby from Store #2034; and ultimately preventing Selby from finishing her intended purchase.

108.    These acts of retaliation have directly and proximately caused Selby pecuniary loss, emotional pain, embarrassment, humiliation, inconvenience, and anxiety.

109.    In subjecting Selby to the acts of retaliation discussed above, Defendants acted with malice or reckless indifference to her Section 1982 rights, making it necessary to award punitive or exemplary damages to punish Defendants and deter other retail establishments from similar misconduct.

**Eighth Claim for Relief**

**Retaliatory Harassment in Violation of Section 1982**

110.    Yvonne Selby incorporates every preceding paragraph as alleged above.

111.    Section 1982 forbids a private actor to subject a retail consumer to harassment on account of the consumer's protected conduct.

112.    As a result of Selby's Section 1982 protected conduct, Defendants engaged in a series of related materially adverse acts, including (but not limited to) the following: lying about a policy to both justify rejecting Selby's cash payment and hide the fact that they had racially profiled her; falsely accusing Selby of using her cell phone to record Whiley; threatening to report Selby to the Baltimore PD for disorderly conduct, even though she never acted disorderly; falsely reporting to the Baltimore PD that Selby acted disorderly; making the Baltimore PD eject Selby from Store #2034; and ultimately preventing Selby from finishing her intended purchase.

113.     By doing so, Defendants created a retail environment permeated with retaliatory intimidation, ridicule, and insult that was sufficiently severe and sufficiently pervasive to create an abusive retail environment that ultimately prevented Selby from buying personal property.

114.     This retaliatory harassment has directly and proximately caused Selby pecuniary loss, emotional pain, embarrassment, humiliation, inconvenience, and anxiety.

115.     In subjecting Selby to the retaliatory harassment discussed above, Defendants acted with malice or reckless indifference to her Section 1982 rights, making it necessary to award punitive or exemplary damages to punish Defendants and deter other retail establishments from similar misconduct.

### Ninth Claim for Relief

**Unfair and Deceptive Trade Practices
in Violation of the Maryland Consumer Protection Act**

116.     Yvonne Selby incorporates every preceding paragraph as alleged above.

117.     The Maryland Consumer Protection Act proscribes "unfair and deceptive trade practices in the sale . . . of any consumer goods." *Lloyd v. General Motors Corp.*, 397 Md. 108, 141 (Md. 2007) (internal citation and quotation marks omitted). Unfair and deceptive trade practices include any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers[.]" *Id.*

118.     Defendants engaged in unfair and deceptive practices in the sale of consumer goods because Whiley made several false statements about purchasing the pain medicine that had the capacity to deceive and mislead Selby. Among other things, Whiley told Selby repeatedly that CVS has a policy against accepting cash payment for prescribed narcotics

and that she had to reject Selby's cash payment because of the policy.

119.     These violations of the Maryland Consumer Protection Act have directly and proximately caused Selby actual harm. Besides suffering pecuniary loss and inconvenience owing to the additional time and expense she spent in her effort to buy her son's medicine elsewhere, she has suffered and continues to suffer emotional pain, embarrassment, humiliation, inconvenience, and anxiety owing to the unlawful poor service and inferior treatment she received at Store #2034 .

120.     In subjecting Selby to the violations of the Maryland Consumer Protection Act discussed above, Defendants acted with malice or reckless indifference to her rights under the Act, making it necessary to award punitive or exemplary damages to punish Defendants and deter other retail establishments from similar misconduct.

## Jury Trial Demand

121.     Selby asks for a jury trial on all triable issues.

## Prayer for Relief

122.     Selby prays that the Court:

    a.  Declare that Defendants violated Section 1981, Section 1982, and the Maryland Consumer Protection Act;

    b.  Order that Defendants refrain from engaging in similar conduct, including the unlawful conduct described in this Complaint;

    c.  Order that Defendants take the affirmative action needed to ensure that the effects of their unlawful conduct are eliminated;

    d.  Award nominal damages, in an amount to be determined at trial;

    e.  Award economic damages, in an amount to be determined at trial;

f.   Award compensatory damages, in an amount to be determined at trial;

g.   Award punitive damages, in an amount to be determined at trial;

h.   Award prejudgment interest;

i.   Award attorney's fees and costs; and

j.   Award any other relief that the Court considers just, necessary, or proper.

Respectfully submitted,

/s/ Onyebuchim A. Chinwah
Onyebuchim A. Chinwah
THE CHINWAH FIRM LLC
8403 Colesville Road Suite 1100
Silver Spring, MD 20910
Phone: (240) 842-9292
Email: oc@chinwahfirm.com

*Attorney for Yvonne Selby*